UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIA D. MCPIKE-MCDYESS

            Plaintiff,

    v.                                              Case No. 14-13483
                                                    HON. TERRENCE G. BERG
PATRICK DOYLE VICE PRESIDENT                        HON. DAVID R. GRAND
JP MORGAN CHASE BANK, N.A.

            Defendants.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT (DKT. 19)**

This is a dispute between a bank and the previous owner of a residence over the

repayment of a mortgage. Plaintiff Tia McPike-McDyess, appearing pro se, filed a

complaint against Defendants Patrick Doyle and JP Morgan Chase Bank[1] ("Chase")

---

[1] Throughout this litigation, because of Plaintiff's inconsistent pleadings, it has not been clear who Plaintiff is suing or whether she is suing one or two Defendants. Plaintiff's initial complaint filed in state court appears to name "Patrick Doyle Vice President" as the only Defendant. (*See* Dkt. 1, Ex. A at 4 [using the singular noun "Defendant" under Patrick Doyle's name].) Plaintiff states in that complaint that "Defendant(s) Patrick Doyle is the Vice President of JP MORGAN CHASE LLC" but her allegations emphasize wrongful contact by "Defendants" in the course of "their business." (*Id.* at 5, 10, 12) (emphasis added). On September 29, 2014, Defendants filed and the Court granted a motion requesting, among other things, that Plaintiff clarify "who the defendant(s) are in this lawsuit." (Dkt. 6, p. 2; Dkt. 6.) Chase maintains that there is no Patrick Doyle working for the bank as a Vice President and has repeatedly stated in its pleadings that Chase appears "out of an abundance of caution" and is investigating whether "Patrick Doyle" is or ever was a Chase employee. (Dkt. 11, p. 1 n. 1; Dkt. 19, p. 1 n. 1.) Plaintiff responded to the Court's order on October 8, 2014 by indicating that "Patrick Doyle" was sending her collection letters but she did not explicitly clarify whether she intended to sue Patrick Doyle only, or only Chase, or both. (Dkt. 10, p. 6.) During a telephonic status conference on December 17, 2015, Plaintiff stated that she was trying to sue *the person* who wrote the collection letters. (*See* Dkt. 16 and related minute entry.) From the Court's review of the record, it appears that Plaintiff made a typographical error by naming "Patrick *D*oyle Vice President" as a Defendant in this case because the collection letters received by Plaintiff were signed by Chase Vice President Patrick *B*oyle. (*E.g.* Dkt. 19, Ex. 3.) In Plaintiff's most recent pleading filed on February 4, 2015, however, Plaintiff deleted "Patrick Doyle Vice President" from the case caption without explanation, listing only "JP Morgan Chase Bank LLC" as a Defendant. (Dkt. 21, p. 1.) The Court recognizes the Plaintiff is appearing pro se, but establishing who is being sued is a threshold matter for any lawsuit. Plaintiff has not formally attempted to correct or amend

in the Circuit Court of Washtenaw County, Michigan, on August 1, 2014. (Dkt. 1, Ex. A.) In her complaint, Plaintiff alleges that Defendants have wrongfully attempted to collect the outstanding balance on a mortgage loan Plaintiff took out on a home she sold at a short sale nearly five years ago. (*See Id.* at pp. 7-8.)

Plaintiff accuses Defendants of violating section 623(a)(1)(A)[2] of the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681 et seq. (*Id.* at 7.) Section 623(a)(1)(A) establishes the responsibilities of entities providing information to consumer reporting agencies and prohibits reporting any information that the reporter "knows or has reasonable cause to believe" is not accurate. Plaintiff maintains that over a three-year period Defendants "reported dates of delinquency to credit reporting agencies" that Defendants knew or should have known were inaccurate because the home Plaintiff had mortgaged had been sold. (*Id.* at 7.) As a result of Chase's efforts to collect on a debt Plaintiff argues she no longer owes, Plaintiff alleges that she has endured pain and suffering, as well as "restrictions to schooling, housing and employment, and other related damages." (*Id.*)

Defendants' motion to dismiss Plaintiff's complaint is now before the Court. (Dkt. 19.) Defendants contend that Plaintiff's claims should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted. (*Id.* at 2.) There is no dispute that Plaintiff sold

her pleadings to clarify whether she is in fact suing Patrick Doyle/Boyle as an individual or Chase Bank, or both. As a result, the Court will refer to both Patrick Doyle and Chase as Defendants.

[2] In her complaint, Plaintiff cites to section 623(a)(5) of the FCRA. (Dkt. 1, Ex. A at 12.) However, the section of the FCRA that Plaintiff quotes from is section 623(a)(1)(A). Section 623(a)(5) of the FCRA pertains to the duty to provide notice of delinquency on an account.

the home at a short sale, but Defendants point out that while Chase agreed to release its lien on the home as part of the short sale, Chase did not excuse Plaintiff from paying the remaining balance on the mortgage. (Dkt. 19, Ex. 2.) Plaintiff responded on February 4, 2015. (Dkt. 21.) Having carefully reviewed the parties' briefs, the Court finds that oral argument will not significantly aid the decision making process. Thus, under E.D.Mich. LR 7.1(f)(2), no evidentiary or motion hearing will be held.

Plaintiff's claims are based on her belief that because she sold the home at a short sale, the mortgage is void and she is not obligated to repay any outstanding balance on the loan. (*See e.g.* Dkt. 10, p. 6.) That does not appear to be the case. Because Plaintiff signed a letter of understanding acknowledging her responsibility to pay the remaining balance on the mortgage loan after the short sale, her claims will be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.   FACTUAL BACKGROUND

On January 16, 2004, Plaintiff took out an adjustable-rate mortgage on a home located at 10048 Virgil Road in Redford, Michigan in the amount of $130,200.00. (Dkt. 19, Ex. A at 61, 64-65.) The loan was for 360 months at an initial interest rate of 6.6%. (*Id.* at 61.) On or about July 23, 2010, Plaintiff sold the home at a short sale to a third party for $20,000. (*See* Dkt. 1, Ex. A at 17-18; Dkt. 19, Ex. 2.) Of the total purchase price, Chase received approximately $15,942.73 that was

applied to the loan's remaining balance. (Dkt. 1, Ex. A at 17, line 504.) The balance was applied to Plaintiff's closing costs. (Dkt. 19, Ex. 2 at 2.)

As a condition of the short sale, Plaintiff signed a letter on July 23, 2010 accepting the terms of Chase's approval of the sale. (Dkt. 19, Ex. 2.) The letter was notarized on the same day. (*Id.* at 6-8.) In the letter, Chase agreed to release its lien on the property but the Plaintiff was "still responsible for all deficiency balances remaining on the Loan, per the terms of the original loan documents." (*Id.* at 2.) In other words, the short sale discharged the mortgage but did not excuse Plaintiff from her obligation to pay the remaining balance on the loan. Plaintiff could sell the home, but would still owe Chase.  Plaintiff does not address this letter or point to any contrary evidence suggesting that she is not responsible for the balance of the loan.

After the short sale, Chase tried to collect the remaining loan balance from Plaintiff by sending collection letters signed by Patrick Boyle, the apparent Vice President of Chase. (Dkt. 12, Exs. D-H; Dkt. 19, Ex. 3.) Plaintiff alleges that Chase has "called, written and interviewed" her for "more than 5 years" asking for "a payment for the full amount for this home every month." (Dkt. 10, p. 6.) The most recent collection letter in evidence, dated July 23, 2014, indicates that the outstanding loan amount is $118,457.45. (Dkt. 12, Ex. G; Dkt. 19, Ex. 3.)

## A.  Plaintiff's Initial Complaint

On August 1, 2014, Plaintiff filed a complaint against Defendants in the Circuit Court of Washtenaw County, Michigan. (Dkt. 1, Ex. A.) Plaintiff apparently

4

mailed the summons and complaint to "Patrick Doyle Vice President" at the return address of a Chase payment processing center on the UPS mailing labels of the collection letters. (*See* Dkt. 1, Ex. A at 3; Dkt. 12, Ex. I.) In her complaint, Plaintiff summarized her argument in the form of a question: "[w]hy does the defendant still owe after the close of a home sale?" (Dkt. 1, Ex. A at 8.) Plaintiff alleged that Defendants violated section 623(a)(1)(A) of the FCRA when "they reported dates of delinquency to credit reporting agencies, including delinquency dates, that were later then [sic] the month and year of the commencement of the delinquency." (*Id.* at 7, 10.)

Plaintiff requested: (1) "monetary civil penalties of not more then [sic] $2,500 per violation,"; (2) letters of apology from Defendants to Plaintiff, and to "[t]he USDA as well as each credit reporting agency explaining the retraction of the denial"; (3) punitive damages of "$300,000.00 FSA Farm Loan Loss"; (4) compensatory damages equal to "three (4) [sic] years of salary $290,000.00"; and (5) all "special and future damages." (*Id.* at 13.) Plaintiff's damages changed in subsequent fillings. (*E.g.* Dkt. 5, p. 8.)

**B. Defendants' Notice of Removal**

On September 8, 2014, Defendants removed this case to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 because the Plaintiff had accused Defendants of violating federal law. (Dkt. 1, p. 3.) Defendants also removed on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a) because the

lawsuit is between citizens of different states, Michigan and Ohio, and the amount in controversy is more than $75,000. (*Id.* at 4.)

Defendants' removal was valid[3], but Plaintiff responded on September 23, 2014 by filing a document captioned as a "Writ of Certiorari." The Court construed this pleading as a response to Defendants' notice of removal. (Dkt. 5.) In Plaintiff's response, she lists "several Federal crimes being committed by this company" and states that the filing of a notice of removal "prior to the court's ruling is a retaliatory act and is in poor taste." (*Id.* at 1, 8.) The additional federal crimes the Plaintiff accused Defendants of committing includes 18 U.S.C. §§ 1341, 1342, and 1350. (*Id.* at 1-4.) Plaintiff also accused Defendants of violating Michigan Court Rule 2.101. (*Id.* at 6-7.) Plaintiff concluded by asking both the state and federal courts to consider awarding her $5,000,000.00 in damages[4] and to punish "corporate officers and conspirators" with "terms of imprisonment." (*Id.* at 8.)

## C. Subsequent Motions

Defendants then filed a motion on September 29, 2014 that the Court granted requesting that Plaintiff: (1) clarify who she was suing; and (2) amend her complaint to include numbered paragraphs and specifically identified counts. (Dkt. 6; Dkt. 7.) On September 30, 2014, Plaintiff filed a second copy of her September 23, 2014 response to Defendants' notice of removal. (Dkt. 8.) On October 8, 2014,

---

[3] Under 28 U.S.C. § 1441(a), Defendants can remove any civil action brought in state court over which the federal district courts have original jurisdiction to the federal district court "embracing the place where such action is pending." Removal can also be based on diversity jurisdiction. 28 U.S.C. § 1441(b). In this case, both types of jurisdiction are present thus Defendants had the right to remove.
[4] Plaintiff does not explain how she calculated her monetary damages.

Plaintiff responded to Defendants' motion for a more definitive statement with a filing the Court construed as Plaintiff's amended complaint. (Dkt. 10.)

The amended complaint consisted of a list of "36 federal laws" Plaintiff accused Defendants of violating, the name and address of "Patrick Doyle" who Plaintiff claims is the person sending collection letters, and a brief explanation of the basis of her claims: although Plaintiff had sold her home, Chase has continued to demand "additional payment(s) after the completion of the home sale." (Dkt. 10, pp. 1, 6.) Plaintiff does not explain or provide specific examples of how Defendants allegedly broke each of these 36 federal laws. Defendants replied on November 3, 2014, arguing that Plaintiff had still not clarified who she was suing, amended her complaint to include numbered paragraphs and specific counts, or properly served Defendants by following the procedures required under the federal rules. (Dkt. 11, p. 7.)

On November 10, 2014, Plaintiff filed a motion for summary judgment arguing that there was proper service "because the opposing counsel WAS ABLE to provide a response." (Dkt. 12, p. 1.) Plaintiff included copies of several UPS mailing labels and five collection letters signed by Patrick Boyle, Vice President of Chase Bank as evidence of proper service on Defendants.[5] (*Id.* at pp. 7-27.) Moreover,

---

[5] Plaintiff included this evidence to show that service was proper because she had mailed her summons and complaint to the person who signed the collection letters at the return address of a Chase payment processing center printed on the UPS mailing labels. (Dkt. 12, pp. 7-27.) In Michigan, service in civil cases filed in circuit and district court is regulated by Michigan Court Rules 2.101 through 2.108. Process in civil cases may be served by any legally competent adult who is not a party to the case. MCR. 2.103(A). Service of court papers on a person such as Patrick Boyle through the mail must be done by sending the court papers by registered or certified mail, return receipt requested, to the Defendant's last known address. MCR 2.105(A)(2). Service is properly made when the Defendant acknowledges receipt and a copy of the return receipt signed by the Defendant

Plaintiff again maintained that Chase breached a contract with Plaintiff after the short sale and ruined her credit. (*Id.* at 3.) According to Plaintiff, Defendants "admit the excessive mailing, telephone calls and threats to her credit, life and lively hood [sic]." (*Id.*) Plaintiff requested $1,097,000.00 from Defendants "of the 15 Million Dollars owed"[6] and "appreciable jail time and future damages the court deems necessary." (*Id.* at 5.) Defendants responded on November 25, 2014, arguing that Plaintiff's motion for summary judgement did not comply with the federal rules. (Dkt. 14.)

Plaintiff did not reply but instead filed a motion she captioned as a "Motion for Sua Sponte" on November 21, 2014. (Dkt. 13.) In this motion, Plaintiff repeats the same claims made in her motion for summary judgment. (*Id.*) On December 17, 2014, a telephonic status conference was held and the parties consented to participating in a settlement conference with a magistrate judge. (*See* minute entry on December 17, 2014.) All pending motions were dismissed without prejudice, but the parties were notified that these motions could be refiled after the settlement conference took place. (*Id.*) No such motion was refiled by either party.

A settlement conference was held on January 16, 2015. (Dkt. 18; minute entry on January 16, 2015.) Plaintiff apparently refused Defendant's terms because she believed that "the terms did not settle the debt(s) and there was nothing

---

must be attached to the proof of service. *Id.* To serve court papers on a corporation like JP Morgan Chase, a Plaintiff must follow the steps listed in Michigan Court Rule 2.105(D). Defendants argue that they have yet to be properly served with the summons and complaint in this matter. (Dkt. 19, p. 3 n. 2.)

[6] Plaintiff fails to explain how she recalculated her monetary damages.

presented in writing." (Dkt. 21, p. 2.) Plaintiff further remarked that she "was afraid for her life" during the settlement conference but did not elaborate. (*Id.*)

Defendants filed a motion to dismiss this case on January 28, 2015.[7] (Dkt. 19.) On February 4, 2014, Plaintiff filed a response captioned as a "Request for Rehearing" that the Court construes as her response to Defendants' motion to dismiss because in this motion, Plaintiff "requests that the Court not dismiss this action" and states that she does not "confer with a Motion to Dismiss." (Dkt. 21, pp. 1, 3.) Plaintiff's response includes a Michigan state court application for appointment of counsel and a Michigan state court motion to remove this case from mediation. (*Id.* at 5-7.)

A status conference was held on February 26, 2015 (Dkt. 23) but Plaintiff did not appear or respond to repeated attempts to contact her via phone. Plaintiff contacted the Court on February 27, 2015 requesting to reschedule. The Court granted Plaintiff's request and rescheduled and held the status conference on April 1, 2015. (Minute entry on April 1, 2015.) Defense counsel reiterated that the settlement terms offered at the settlement conference were still available but Plaintiff again declined to accept. The Court then turned to resolving Defendants' pending motion to dismiss.

## II.   LEGAL STANDARD

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R.

---

[7] Because neither party refiled any of the motions that were dismissed without prejudice on December 17, 2014, Defendants' motion to dismiss is the only pending motion in this case.

Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a case of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A claim is thus facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556).

When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court primarily considers the allegations in the complaint; although matters of public record, orders, items

appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *see also Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed part of the pleadings). Where "the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner*, 108 F.3d at 89.

Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar.30, 2011).

## III.   ANALYSIS

Defendants have moved to dismiss Plaintiff's complaint (Dkt 1, Ex. A) and amended complaint (Dkt. 10) under Fed. R. Civ. P. 12(b)(6) because both pleadings fail to state a claim upon which relief can be granted. (Dkt. 19, p. 2.) Specifically,

11

Defendants argue that Plaintiff's pleadings should be dismissed because: (1) her lawsuit is based on her mistaken belief that the short sale excused her from paying the remaining loan balance; (2) Plaintiff does not identify any specific contractual provision that Chase allegedly breached or any alleged damage she suffered as a result of the alleged breach of contract; and (3) the pleadings do not contain enough facts to show that a legal wrong has been committed that the Court can remedy. (*Id.* at 2, 7-9.) Because the basis of Plaintiff's lawsuit is erroneous, her complaint and amended complaint will be dismissed without reaching Defendant's second and third arguments.

**A. The Short Sale**

The basis for Plaintiff's lawsuit appears to be her belief that she no longer owes on the mortgage loan because she sold the home that was mortgaged to a third party. (*E.g.* Dkt. 1, Ex. A at 3.) As a result, Plaintiff maintains, Defendants' attempt to collect is wrongful and has damaged her credit because Defendants have mistakenly reported her as delinquent to credit reporting agencies in violation of the FCRA. (*Id.* at 7, 10.)

As evidence of her claim, Plaintiff offers: (1) copies of the closing documents from the short sale including a United States Department of Housing and Urban Development settlement statement (Dkt 1, Ex. A at 17-25); (2) five UPS mailing labels addressed to Plaintiff with a return address of a Chase payment processing center (Dkt. 12, Exs. C, I-J); and (3) five collection letters from Chase signed by Patrick Boyle, Vice President (Dkt. 12, Exs. D-H). In support of their motion to

12

dismiss this case, Defendants have submitted copies of: (1) the original mortgage signed by Plaintiff (Dkt. 19, Ex. 1); and (2) Chase's notarized letter approving the short sale of Plaintiff's former home that Plaintiff signed (Dkt. 19, Ex. 2).[8]

On this evidence, it is clear that Plaintiff's belief that the short sale excused her from repaying her mortgage loan is mistaken. A short sale allows "the mortgagor to sell the property and have the mortgage discharged for an amount less than owed to the lender." *James v. Fed. Home Loan Mortgage Corp.*, 2014 WL 4773648, at *9 (E.D. Mich. Sept. 24, 2014). As Defendants note, however, there is no requirement that a short sale also excuse a borrower from having to pay any remaining balance on a loan. *See Id.* (noting that a short sale raises only the "possible avoidance of any residual deficiency liability" for the borrower). A waiver of deficiency is not automatically included as part of a short sale; it can be requested by the mortgagee.[9]

---

[8] Neither of Defendants' exhibits was included with Plaintiff's complaint. Ordinarily, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56. *Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir.1997). However, Defendant may attach documents to a motion to dismiss if the documents are referred to in the complaint or if they are central to Plaintiff's claim. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999); *Weiner*, 108 F.3d at 89. Plaintiff's claims arise out of and reference the short sale of her former home and her belief that the sale excused her from repaying any loan deficiency on the mortgage. As a result, both the mortgage and the letter of understanding submitted by Defendants with their motion to dismiss are central to Plaintiff's claims and are deemed part of the pleadings. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing *Weiner*, 108 F.3d at 89).

[9] The Michigan State Housing Development Authority, for example, advises that anyone seeking to sell their property through a short sale "ask for a **waiver of deficiency** from the Lender." Michigan State Housing Development Authority, *Stages of Foreclosure*, http://www.michigan.gov/mshda/0,4641,7-141-45866_62889_47905-177816--,00.html (last visited Apr. 12, 2015) (emphasis in original). Plaintiff apparently did not do so.

The evidence in this case that was incorporated with the pleadings indicates that: (1) Plaintiff sold her former home as part of a short sale for $20,000; (2) approximately $15,000 was applied to her mortgage; (3) Plaintiff signed an acknowledgment of her continuing liability for the remaining loan balance; and (4) Defendants have tried to collect that remaining balance by sending collection letters.[10] Of these facts, the most significant is that Plaintiff signed a letter of understanding acknowledging the terms of the short sale. (Dkt. 19, Ex. 2.) This letter explicitly states that Plaintiff "is still responsible for *all deficiency balances remaining on the Loan*, per the terms of the original loan documents." (*Id.* at 2) (emphasis added).

Plaintiff does not challenge the validity of the mortgage or the letter she signed acknowledging the terms of the short sale. Although Plaintiff does offer the closing documents from the short sale, these documents only prove that the home sold for $20,000 and that approximately $15,000 was paid to Chase. (Dkt. 1, Ex. A.) The closing documents do not refute Defendants' evidence of the mortgage and Plaintiff's acknowledgement that she remains responsible for the outstanding loan debt. In essence, Plaintiff does not challenge any of Defendants' arguments but instead repeats that she "DOES NOT owe a balance to" Defendants "years after the settled sale of the home." (Dkt. 21, p. 2.)

The record before the Court, however, supports Defendants' position that Plaintiff *does owe* the outstanding loan balance to Defendants. Plaintiff has not

---

[10] Plaintiff alleges that Defendants also called and "interviewed" her, but Plaintiff does not detail or provide any evidence in support of these allegations. Plaintiff does not state when these phone calls and interviews occurred, what was said, or what the result was.

14

alleged sufficient facts to show that there is a dispute that the Court can resolve in this case or provided any evidence to support her claims of harassment and loss of employment and educational opportunities as a result of poor credit. By signing the short sale letter, Plaintiff acknowledged that she was still responsible for the outstanding balance on her mortgage loan (Dkt. 19, Ex. 2) and there is no evidence that Defendants' collection letters violate any law governing debt collection practices in Michigan. *See generally* the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. As a result, Plaintiff is not entitled to any damages such as loss of employment opportunities that might flow from her failure to repay the mortgage loan.

Because Plaintiff's basis for her lawsuit is mistaken, her complaint and amended complaint must be dismissed for failure to state a claim upon which relief can be granted.

**B.  Plaintiff's Additional Requests**

With her response to Defendants' motion to dismiss, Plaintiff included a request for a court-appointed attorney and a motion to remove this case from mediation filed using Michigan state court forms. (Dkt. 21, pp. 5-8.) This request and motion, however, are applicable only in Michigan state court proceedings and this case is currently pending before a federal district court.

This Court would not appoint counsel to represent Plaintiff in this case even if her case were not being dismissed. First, Plaintiff completed a Michigan state court application for counsel and Michigan state court may appoint an attorney only

in certain situations, none of which are applicable in this case.[11] Second, in federal court, appointment of counsel in a civil case is not a constitutional right but a privilege justified only by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605-606 (6th Cir. 1993). Where, as here, a pro se litigant's claims are without merit or when the chances of success are very small, appointment of counsel is not appropriate. *Id.*

Plaintiff also filed a motion to remove this case from mediation using a Michigan state court form, citing an "unresolved settlement." (Dkt. 21, p. 6.) This motion, like Plaintiff's request for appointment of counsel, can only be considered by a Michigan state court. Moreover, this case is not in mediation. The parties were referred to Magistrate Judge David R. Grand on December 17, 2015 for one settlement conference only after the parties indicated to the Court that they were willing to participate. (Dkt. 17.) Even if the Court could entertain Plaintiff's request, it would be denied as moot.

## C. Defendants' Request to Strike Plaintiff's Response

On February 16, 2015, Defendants filed a supplemental brief (Dkt. 22) in support of their motion to dismiss (Dkt. 19). In this brief, Defendants request that the Court "entertain striking Plaintiff's Docket No. 21" because Plaintiff disclosed the settlement negotiations discussed at the January 16, 2015 Settlement Conference. (Dkt. 22, p. 5.)

---

[11] For a list of these situations, see Michigan Courts, How to Find an Attorney, http://courts.mi.gov/self-help/center/legalhelp/pages/default.aspx.

In her response to Defendants' motion to dismiss, Plaintiff discusses the substance of the January 16, 2015 settlement conference in only two sentences. (Dkt. 21, p. 2.) As Defendants acknowledge, the authority to strike a pleading must be exercised sparingly by the Court and only when the purposes of justice so require. (Dkt. 22, p. 5.) This is not such a circumstance; therefore the Court declines to strike Plaintiff's entire response to Defendants' motion to dismiss.

## IV.   CONCLUSION

The Court understands the difficulties pro se Plaintiffs face in the litigation process and the Court has attempted to afford Plaintiff every opportunity to be heard in this case and to engage in settlement conferences which could have resolved this case in a manner favorable to Plaintiff, but Plaintiff rejected Defendant's settlement offer, choosing instead to press claims that are unfounded. Plaintiff has been given the opportunity to amend her complaint but has repeatedly failed to state a claim upon which relief can be granted.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. 19) is

**GRANTED.** Plaintiff's claims against Defendants are hereby **DISMISSED WITH**

**PREJUDICE** and Plaintiff cannot file another lawsuit based on these same

grounds.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: April 13, 2015

**Certificate of Service**

I hereby certify that this Order was electronically submitted on April 13, 2015, using the
CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager

18